OPINION
{¶ 1} Plaintiff-appellant, John J. Connors, Jr. ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas, in which that court granted summary judgment against appellant and in favor of defendant-appellee, U.S. Bank ("appellee"). *Page 2 
 {¶ 2} This case began on April 17, 2006, when appellant filed a complaint against appellee and several of appellee's employees. Appellant filed his first amended complaint on May 6, 2006. Therein, he alleged that he maintained a checking account at appellee's predecessor-in-interest, Firstar Bank ("Firstar"). Appellant further alleged that on April 17, 2000, he purchased two counter checks at a Firstar branch. He alleged that he delivered the first check to Firstar on that date, and that it was made payable to Firstar and drawn on his Firstar checking account in the amount of $1,450. Appellant further alleged that on April 29, 2000, he delivered to Firstar the second counter check in the amount of $100, which was also drawn on his Firstar checking account, and was made payable to John Wollett. Appellant alleged that at the time he delivered the checks to Firstar, he had funds on deposit in his checking account in excess of $1,550.
 {¶ 3} Appellant alleged that the Firstar teller who prepared the checks typed the wrong account number on the checks, resulting in the funds being initially withdrawn from another customer's account. Later, on July 17, 2000, Firstar sent appellant a letter demanding payment in the amount of $1,550, stating that the "Reason for Dishonor" was "NSF." Though not detailed in the complaint, the record reveals and it is undisputed that by the time Firstar realized it had debited the wrong account after paying the two counter checks, and sought to debit the amounts from appellant's account, appellant's account no longer contained sufficient funds.
 {¶ 4} Appellant alleged that appellee and its agents had failed to exercise ordinary care in typing the wrong account number on the counter checks, and that this mistake amounted to an alteration of the instruments within the meaning of Article 4 of the Uniform Commercial Code ("UCC"). He further alleged that appellee had violated Article *Page 3 
4 of the UCC by failing to provide notice of dishonor by the bank's midnight deadline, and therefore had provided an untimely notice of dishonor. He further alleged that appellee had breached a contract between the parties. Appellant alleged that appellee is liable to him for the funds subject of the instruments in question, plus attorney fees and costs.
 {¶ 5} On May 11, 2006, appellee and the employee-defendants filed a joint answer. They denied the substantive allegations of the complaint, and asserted several affirmative defenses, including that appellant's complaint failed to state a claim and that his claims are barred by the applicable statute of limitations. On the same date, appellee filed a counterclaim, in which it alleged that appellant was an attorney licensed to practice in Ohio in 2000, and that the checking account subject of appellant's complaint was an Interest on Lawyers' Trust Account ("IOLTA account"). Appellee alleged that appellant has subsequently been permanently disbarred, in part due to his refusal to reimburse appellee for the IOLTA funds subject of this action. SeeDisciplinary Counsel v. Connors, 97 Ohio St.3d 479, 2002-Ohio-6722,780 N.E.2d 567.
 {¶ 6} Appellee also alleged that when appellant presented the first check, he received $1,450 in cash. It alleged that when the checks were presented, Firstar paid them, but then mistakenly withdrew the funds from another customer's account. By the time Firstar discovered this mistake, the IOLTA account contained insufficient funds to repay Firstar for the cash it had delivered to appellant or for the $100 paid to John Wollett. Despite receiving a notice of insufficient funds, and demand for reimbursement, appellant refused to reimburse appellee. Appellee asserted a claim for breach of the parties' account agreement, plus interest. *Page 4 
 {¶ 7} Appellant unsuccessfully sought to have appellee's counterclaim stricken as untimely and dismissed for failure to state a claim. He also filed several unsuccessful discovery motions. Thereafter, he filed a reply to appellee's counterclaim, denying the allegations of breach of contract, and asserting various defenses. On April 23, 2007, appellant moved for leave to file a second amended complaint in order to add one phrase describing Firstar's actions as having amounted to "chargebacks," but the trial court denied the motion because the proposed second amended complaint added no new facts, transactions, events or claims.
 {¶ 8} On May 29, 2007, the defendants filed their motion for summary judgment as to appellant's claims and as to appellee's counterclaim. They argued that when Firstar typed the incorrect account number on the two counter checks, this was not an "alteration" under the UCC or the Ohio Revised Code. Moreover, they argued, because Firstar paid both checks promptly upon their presentment, Firstar had not "dishonored" the checks but had in fact honored them. Therefore, the defendants maintained, no defendant made an untimely "notice of dishonor."
 {¶ 9} They pointed out that appellant knew that both checks had been paid because he himself received cash for the first one, and the payee of the second check, Mr. Wollett, would not have complained to appellant about not being paid because he had in fact been paid. In addition, they argued, copies of appellant's IOLTA account statements demonstrate that appellant was aware that Firstar had not yet debited his account in the amount of the two counter checks. Under these facts, the defendants maintained, appellant is estopped from claiming any loss or injury resulting from the alleged alteration or the debiting of his account in a less than prompt manner. Finally, the *Page 5 
defendants argued that appellant's claims were barred by the three-year limitation period in R.C. 1303.16(G)(3).
 {¶ 10} As to the counterclaim, appellee argued that there was no genuine issue of material fact, and the evidence demonstrated that appellant had breached his account agreement by failing and refusing to reimburse appellee for the funds paid pursuant to the two counter checks. It sought judgment in the amount of $1,530.81. Appellee attached to its motion copies of the two checks, copies of statements for appellant's IOLTA account for the periods ending April 28, 2000 and July 31, 2000, and a copy of the September 25, 2000 loss/recovery form documenting the events surrounding the two counter checks at issue.
 {¶ 11} Appellant never responded to appellee's motion for summary judgment. By decision and entry journalized July 27, 2007, the trial court granted the motion. In so doing, the trial court determined: (1) the incorrect account number did not constitute an alteration as that term is defined in R.C. 1303.50; (2) there had been no dishonor of the counter checks, as that term is defined in R.C. 1303.62; (3) the individual employee-defendants were not personally liable to appellant because there was no evidence that any of them had acted outside of the scope of his or her employment; and (4) appellant's claims are barred by the three-year limitation period contained in R.C. 1303.16(G)(3).
 {¶ 12} Appellant timely appealed and advances nine assignments of error, as follows:
 1. The trial court erred in granting US Bank's motion for summary judgment on its claim against plaintiff-appellant. There was no duty owed by plaintiff-appellant and even if one existed, there was no evidence in the record that plaintiff-appellant *Page 6 
was negligent, let alone undisputed evidence of negligence warranting summary judgment.
 2. The trial court erred in granting US Bank's motion for summary judgment dismissing all affirmative defenses of plaintiff-appellant to the claims of US Bank.
 3. The trial court erred in granting US Bank's motion for summary judgment on its breach of contract claim against plaintiff-appellant. The bank submitted no evidence of the existence of any contract, let alone undisputed evidence of breach of any contract. Further, the alleged breach was base [sic] solely on a claim that the plaintiff-appellant's IOLTA account was overdrawn; when the account was not overdrawn, and thus there was no breach of contract.
 4. The trial court erred in granting US Bank's motion for summary judgment dismissing plaintiff-appellant's claim based on the bank's failure to meet its midnight deadline. Under the applicable UCC provision, the checks were finally paid. The bank was then accountable to plaintiff-appellant for $1,540.00 [sic] and such funds should have remained in the IOLTA account.
 5. The trial court erred in granting US Bank's motion for summary judgment dismissing plaintiff-appellant's claim based on US Bank's failure to send notice of the two NSF bank checks. There was an issue of fact as to whether such notice was sent and sent timely.
 6. The trial court erred in granting US Bank's motion for summary judgment dismissing plaintiff-appellant's claim based on US Bank's failure to meet its midnight deadline. Under the applicable UCC provisions, the checks were finally paid and the bank was accountable to plaintiff-appellant for $1,540.00 [sic], and such funds should have remained in the IOLTA account on April 17, 2000. As a result of this wrongful conduct by US Bank, plaintiff-appellant's IOLTA account was wrongful [sic] debited in the amount of $1,540.00 [sic].
 7. The trial court erred in granting US Bank's motion for summary judgment on its claim based on the midnight deadline violation regarding the two checks described in assignment of error number 4. *Page 7 
 8. The trial court erred in denying plaintiff-appellant's motion to compel discovery.
 9. The trial court erred in granting US Bank's motion for summary judgment based on the statute of limitations, as the trial court erroneously applied the statute of limitations.
 {¶ 13} We review the trial court's grant of summary judgment de novo.Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 654 N.E.2d 1327. Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, when the evidence is construed in a light most favorable to the nonmoving party. Civ.R. 56(C); State ex rel. Grady v. State Emp.Relations Bd., 78 Ohio St.3d 181, 183, 1997-Ohio-221, 677 N.E.2d 343. If the moving party has satisfied its initial burden under Civ.R. 56(C), then "the nonmoving party has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party."Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107, 662 N.E.2d 264.
 {¶ 14} Appellant's first, second and third assignments of error all concern the trial court's grant of summary judgment to appellee on its counterclaim. In his first assignment of error, appellant argues that the trial court erred in granting summary judgment because there was no evidence that appellant was negligent. However, appellee's counterclaim did not state a claim for negligence and the trial court did not grant summary judgment *Page 8 
based on any theory of negligence. In fact, appellant himself states, at page 16 of his brief, "US Bank does not contend that Mr. Connors was negligent." Appellant's first assignment of error is overruled.
 {¶ 15} In his second assignment of error, appellant alleges that the trial court erred in "dismissing" all of his affirmative defenses. However, appellant did not raise any defenses in opposition to appellee's motion for summary judgment. The Supreme Court of Ohio recently held, "[a] plaintiff or counterclaimant moving for summary judgment does not bear the initial burden of addressing the nonmoving party's affirmative defenses." Todd Dev. Co., Inc. v. Morgan,116 Ohio St.3d 461, 2008-Ohio-87, 880 N.E.2d 88, syllabus. The court explained:
 [T]here is no requirement in the Civil Rules that a moving party must negate the nonmoving party's every possible defense to its motion for summary judgment. To the contrary, Civ.R. 56(E) states that a party opposing summary judgment may not rest upon its pleadings, but must set forth specific facts showing there is a genuine issue for trial. If a moving party meets the standard for summary judgment required by Civ.R. 56, and a nonmoving party fails to respond with evidence of a genuine issue of material fact, a court does not err in granting summary judgment in favor of the moving party.
Id. at ¶ 14.
 {¶ 16} Because appellant failed to respond to appellee's motion for summary judgment, he waived any affirmative defenses that he had earlier asserted in his reply to appellee's counterclaim. Thus, the only issue with which we are concerned is whether appellee met its initial burden of demonstrating the absence of genuine issues of material fact, and whether summary judgment in appellee's favor was appropriate. See ante, ¶ 13. Appellant's second assignment of error is overruled. *Page 9 
 {¶ 17} In his third assignment of error, appellant states that the trial court erred in granting summary judgment on appellee's counterclaim because appellee did not provide evidence of the existence of a contract or of a breach on appellant's part. We have read appellant's brief in full, which contains disordered and largely incoherent assertions, but we can divine no argument therein pertaining to appellant's third assignment of error. For this reason, the assignment is properly disregarded pursuant to App.R. 12(A)(2). Bond v.Village of Canal Winchester, Franklin App. No. 07AP-556, 2008-Ohio-945, ¶ 17. Accordingly, appellant's third assignment of error is overruled.
 {¶ 18} Likewise, appellant's eighth assignment of error is overruled because there are no arguments in appellant's brief with respect to this assignment. Accordingly, we overrule appellant's eighth assignment of error.
 {¶ 19} All of the remaining assignments of error pertain to the trial court's grant of summary judgment on appellant's claims of alteration and untimely notice of dishonor.
 {¶ 20} In his fourth, fifth, sixth and seventh assignments of error, appellant maintains that the trial court erred in determining that Firstar did not violate the UCC's requirement that a payor bank provide timely notice of dishonor. Because these assignments present the same issue, we will address them together.
 {¶ 21} A payor bank is responsible for late return of an item presented to it and received by it if it does not pay or return the item or send notice of dishonor until after its midnight deadline. R.C.1304.28(A)(1); UCC 4-302. In other words, a "payor bank * * * is required to make good the amount of a draft if it fails to return the draft or give notification of its dishonor by the `midnight deadline', defined as `midnight on the next banking day following the banking day on which [the payor bank] receives the relevant item.'" *Page 10 Appletiser S. Africa (PTY) Ltd. v. Bank Leumi Trust Co. of New York
(S.D.N.Y.1997), 1997 U.S. Dist. LEXIS 769, at *10-11.
 {¶ 22} Section 1303.62 of the Ohio Revised Code provides, in pertinent part:
 (B) Dishonor of an unaccepted draft other than a documentary draft is governed by the following rules:
 (1) If a check is duly presented for payment to the payor bank otherwise than for immediate payment over the counter, the check is dishonored if the payor bank makes timely return of the check or sends timely notice of dishonor or nonpayment under section 1304.27 or 1304.28 of the Revised Code or becomes accountable for the amount of the check under section 1304.28 of the Revised Code.
 (2) If a draft is payable on demand and division (B)(1) of this section does not apply, the draft is dishonored if presentment for payment is duly made to the drawee and the draft is not paid on the day of presentment.[1]
 (3) If a draft is payable on a date stated in the draft, the draft is dishonored if presentment for payment is duly made to the drawee and payment is not made on the day the draft becomes payable or the day of presentment, whichever is later, or presentment for acceptance is duly made before the day the draft becomes payable and the draft is not accepted on the day of presentment.
 {¶ 23} With respect to both checks at issue in this case, dishonor would have occurred if payment had not been made on the day of presentment. However, it is undisputed that Firstar paid both items upon their presentment, and there is no evidence of record to the contrary. It is thus apparent that the items were paid and not dishonored. Accordingly, appellee was not required to give appellant notice of dishonor as a matter of law. Bank One v. Streeter (N.D.Ind.2005), 2005 U.S. Dist. LEXIS 41574, at *14-15. *Page 11 
 {¶ 24} Moreover, as appellee points out, so long as each item was properly payable, appellee was entitled to charge the amount of that item to appellant's account. R.C. 1304.30(A); UCC 4-401. "An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank." R.C.1304.30(A); UCC 4-401. Both checks at issue here were properly payable and appellee was entitled to charge the amount of those items to appellant's account. There is no time period contained within R.C.1304.30 limiting when a bank must debit its customer's account.
 {¶ 25} For all of the foregoing reasons, the trial court correctly granted summary judgment in appellee's favor as to appellant's claim for untimely notice of dishonor. Accordingly, appellant's fourth, fifth, sixth and seventh assignments of error are overruled.
 {¶ 26} By his ninth assignment of error appellant contends that the trial court erred in determining that appellant's claims are barred by the limitations period prescribed in R.C. 1303.16.[2] Appellant argues that because the relationship between a bank and its customer is a contractual relationship of creditor and debtor, his claims are governed by the six-year limitations period applicable to contracts not in writing, contained in R.C. 2305.07. Appellant does not cite, and our research has failed to reveal, any authority for this proposition.
 {¶ 27} "It is well established that the contractual relationship between a bank and its customer is governed by R.C. 1304.01 to 1304.40
(Article 4 of the UCC)." Morrison v. First Natl. Bank, Franklin App. No. 01AP-555,[3] 2002-Ohio-783, 2002 Ohio App. LEXIS *Page 12 
779, at *13, citing Ed Stinn Chevrolet, Inc. v. Natl. City Bank (Nov. 27, 1985), Cuyahoga App. No. 49752, reversed on other grounds (1987),31 Ohio St.3d 150, 151, 31 OBR 316, 509 N.E.2d 945. "An action to enforce an obligation, duty, or right arising under sections 1304.01 to 1304.40
of the Revised Code shall be brought within three years after the cause of action accrues." R.C. 1304.09; UCC 4-111. Moreover, R.C. 1303.16, imposes a three-year limitation period upon any action to enforce an obligation, duty, or right respecting a check (except an action against a party or acceptor of an instrument, or an action for conversion or breach of warranty, none of which are involved here). Accordingly, a three-year statute of limitation governs appellant's claims. The events giving rise to this action took place in the year 2000 and appellant commenced his action on April 17, 2006, well beyond the expiration of the three-year limitation period. Thus, the trial court correctly determined that appellant's claims are time-barred. For this reason, appellant's ninth assignment of error is overruled.
 {¶ 28} Having overruled all of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
KLATT and FRENCH, JJ., concur.
[1] R.C. 1303.62(B)(2) "applies to * * * checks presented for immediate payment over the counter * * *." UCC 3-502, Official Comment 4.
[2] Appellant does not argue that the trial court erred in determining that Firstar's typographical error was not an alteration.
[3] Certiorari denied, 537 U.S. 1122, 123 S.Ct. 858,154 L.Ed.2d 804. *Page 1